UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GLOBAL GOLD MINING LLC and GLOBAL GOLD CORPORATION,

                    Petitioners,

                    -v.-

CALDERA RESOURCES, INC.,

                    Respondent.

18 Civ. 4419 (KPF)

OPINION AND ORDER

---

KATHERINE POLK FAILLA, District Judge:

      Petitioners Global Gold Mining LLC and Global Gold Corporation (together, "Global Gold" or "Petitioners") have filed a motion for summary judgment requesting confirmation of a final arbitration award issued pursuant to a contract between the parties requiring arbitration. This is Petitioners' second request for confirmation, as they obtained confirmation of a partial award in a previous case in this District before Judge Kenneth M. Karas. *See Glob. Gold Min. LLC* v. *Caldera Res., Inc.*, 941 F. Supp. 2d 374, 378 (S.D.N.Y. 2013) ("*Global Gold I*"). Petitioners now seek confirmation of the arbitrator's final award. The motion is unopposed. While Respondent Caldera Resources, Inc. ("Caldera" or "Respondent") appeared for the initial hearings before the arbitrator and the proceedings before Judge Karas, it declined to appear in the final arbitral hearings and has not appeared at all before this Court. For the reasons set forth below, Petitioners' motion is granted in part, with modifications made to the arbitration award's calculation of post-judgment interest.

**BACKGROUND**[1]

**A.    Factual Background**

For Petitioners, the history of this case conjures up images of digging for years through sediment and rock in order to reach the gemstones beneath. The parties have already been before this Court several times. First, Judge Alvin K. Hellerstein, sitting in Part One, selected an arbitrator for the parties. *See* Order Appointing Arbitrator, No. 11 Misc. 25, *Caldera Res., Inc.* v. *Global Gold Mining LLC* (S.D.N.Y. Mar. 1, 2011). Then, upon the parties' request, Judge Karas issued an interim order maintaining the status quo while the arbitration proceeded. *See* Amended Order, No. 12 Civ. 613 (KMK), *Caldera Res., Inc.* v. *Global Gold Mining LLC, et al.* (S.D.N.Y. Feb. 3, 2012). Finally, in *Global Gold I*, Judge Karas issued an order confirming much of the arbitration award and allowing proceedings on damages to go forward before the arbitrator. 941 F. Supp. 2d at 388-89. Given this extensive history, the Court does not recount the facts of the case in detail, but will provide only those necessary to resolve the instant motion.

Petitioner Global Gold Mining LLC is a "Delaware limited liability company ... and is a wholly owned subsidiary of Global Gold Corporation." (Pet'rs 56.1 ¶ 1). Global Gold Corporation is a Delaware corporation. (*Id.* at

---

[1]    This Opinion draws on facts from the Declaration of Solomon Frager ("Frager Decl." (Dkt. #10)), and the exhibits attached thereto, particularly: the final arbitration award that Petitioners seek to confirm ("Award" (Dkt. #10-1)); and the joint venture agreement between the parties ("JVA" (Dkt. #11-2)). The Court also cites to the Petitioners' Local Civil Rule 56.1 Statement of Material Facts ("Pet'rs 56.1" (Dkt. #13)), which is uncontested. For ease of reference, the Court refers to Petitioners' brief in support of their motion for summary judgment as "Pet'rs Br." (Dkt. #14).

¶ 2).  Caldera is a Quebec corporation.  (*Id.* at ¶ 3).  "Both companies are in the business of mining for precious metals, especially gold."  *Global Gold I*, 941 F. Supp. 2d at 378.

This case arises from Respondent's alleged failure to fulfill its obligations under a joint venture agreement (the "JVA") with Petitioners. (Pet'rs 56.1 ¶¶ 4-8).  The JVA concerned formation of a jointly-opened company to oversee operations of a gold mine in Armenia, the Marjan gold mining property.  *Global Gold I*, 941 F. Supp. 2d at 379.  The parties agreed to resolve their dispute by arbitration pursuant to Section 7 of the JVA.  (JVA ¶ 7).  The parties further agreed to bifurcate the arbitration into two parts: first, a determination of liability, and second, a calculation of damages.  (Pet'rs 56.1 ¶ 11).  On March 29, 2012, the arbitrator, retired State Supreme Court Justice Herman Cahn, issued a decision that resolved the first issue and resolved the question of disputed assets by awarding the property to Global Gold and some remuneration to Caldera.  (*Id.* at ¶¶ 11-14).

After Petitioners sought confirmation of that partial award in this District, Judge Karas, on April 15, 2013, "confirm[ed] the substance of the arbitration order," including the orders regarding the disputed property.  *Global Gold I*, 941 F. Supp. 2d at 378.  Judge Karas rejected Caldera's arguments that Justice Cahn had exceeded his authority, improperly communicated with the parties, violated the American Arbitration Association's Rules, or showed manifest disregard for the law.  *Id.* at 384-88.  Judge Karas did not fully resolve the issue of damages, as Petitioners conceded that the arbitrator's decision on

3

this issue was not final. *Id.* In response, Justice Cahn ordered the parties to appear for a hearing on September 10, 2014, to resolve the issue of damages. (Award 5).

The communication between the parties seemed to break down at this point. Caldera did not provide discovery materials or turn over records for the hearing. (Award 6). On August 29, 2014, Global Gold notified Justice Cahn that it had inadvertently provided confidential material to Caldera, and Caldera had placed this material on the Internet. (*Id.*). Justice Cahn found this conduct to be "in contravention of the binding confidentiality stipulations and orders issued in [the] arbitration." (*Id.*). He ordered the parties to address it at the September 10, 2014 hearing, at which Caldera ultimately declined to appear. (*Id.*).

Justice Cahn issued his final determination on November 10, 2014, and he delineated numerous damages and remedies owed to Petitioners. (Pet'rs 56.1 ¶ 16). He found Petitioners were entitled to legal fees and costs of "$1,822,416.76 as of April 30, 2014, with interest accruing thereafter at the rate of 9% per annum." (*Id.* at ¶ 17). He found that the costs of the arbitration should be borne entirely by Caldera, and ordered Caldera to reimburse Global Gold $88,269.35, representing the arbitration costs already incurred by Global Gold. (*Id.* at ¶¶ 18-19). He also found that Caldera had acted in bad faith in failing to comply with Orders to turn over property, books, and records. (Award 10-11). He awarded Global Gold damages of $50,000.00 with a $250-per-day penalty for each day that Caldera failed to turn over the requested

4

items. (*Id.* at 11). He also found that Caldera had failed to comply with a June 16, 2014 Order to turn over documents relating to certain Caldera defenses, as well as information regarding Caldera's alleged internet campaigns against Global Gold. (*Id.* at 11-12). He assessed a fine against Caldera of $100 a day until those documents were produced. (*Id.* at 12). He also ordered Caldera to turn over communications between Caldera and certain named third parties regarding Global Gold and ordered a fine against Caldera of $100 per day until those materials were produced to Global Gold. (*Id.* at 35-36). Justice Cahn found that Caldera had improperly announced that it was planning to transfer assets that were the subject of the dispute in direct contempt of his orders and awarded damages of $50,000.00 to Global Gold for this action. (*Id.* at 36). He also ordered Caldera to pay a penalty of $100 per day for each day a corrected release was not issued. (*Id.*).

In addition to the litany of penalties, costs, and fines for Caldera's contumacious behavior throughout the proceeding, Judge Cahn found that Caldera owed substantial sums to Global Gold on the substantive claims at issue. He found that Caldera was not entitled to certain royalty payments related to the mine or to reimbursement for certain payments that Caldera made to Global Gold. (Award 15-19). On Global Gold's claims, he ordered the following damages to Global Gold:

    a.    US$115,000.00 plus interest for Caldera's failure to turn over the 500,000 shares of stock in 2010;

    b.    US$3,174,209.00 plus interest for Caldera's failure to make payments to Global Gold;

c. US$577,174.00 for legacy governmental liabilities concerning the Marjan property and [Caldera] shall indemnify and hold Global Gold harmless (including attorney fees) from any governmental claims or liabilities associated with the time it controlled the seal of the Marjan Mining Company;

* * *

e. Caldera shall indemnify and hold Global Gold harmless (including attorneys' fees) [from] any private or non-governmental claims or liabilities during associated with the time they control the seal of the Marjan Mining Company;

f. US$967,345.00 plus interest for their violation of Paragraph (1) of the Partial Final Award and interference in Global Gold's development of the Marjan property and [Caldera] shall relinquish the portions of the Marjan West license which overlap or in any way impinge on the Marjan property license area; and

g. Caldera is liable for defamation and tortious interference with contractual and business relations with regard to Global Gold and its related personnel and so shall (i) pay Global Gold US$3 million in compensatory damages plus interest, (ii) pay Global Gold US$1 million in punitive or exemplary damages plus interest, (iii) remove all the materials and websites controlled in any way by them which were admitted as exhibits on defamatory publications in this case from the internet and other locations, (iv) remove and be permanently enjoined from using Global Gold's trading symbol without permission; (v) not share those materials with others or arrange to have them posted anonymously or otherwise; (vi) independently, I grant Global Gold and those who have been named by Caldera and Bill Mavridis in the admitted exhibits on defamatory publications as well as their attorneys the authority to contact internet service providers, search engine firms, social media sites, stock discussions board (including but not limited to Google, Yahoo, Facebook, Twitter, Stockhouse, Investor's Hub and

>   > Bing) to use this Final Award to remove the material as defamatory.

(*Id.* at 37-39).

Finally, Justice Cahn ordered:

> all publications of "confidential" or attorneys' eyes only material be removed from the internet and any other locations and that their substance not be republished and grant[ed] Global Gold and its attorneys the authority to contact internet service providers, search engine firms, social media sites, stock discussions board(including but not limited to Google, Yahoo, Facebook, Twitter, Stockhouse, Investor's Hub and Bing) to use this Final Award to remove the material — Caldera shall pay Global Gold for US$100.00 per day every day that persons associated with Caldera remain in violation of the Confidentiality Stipulation and Order following the issuance of this Final Award including for each day until full disclosure of all emails and other communications with third parties that the information was shared with or discussed.

(Award 39-40). Any unaddressed claims or counterclaims were denied. (*Id.* at 41).

Adding together the various awards, the total damage award is $10,844,413. The penalties are a collective $650 per day until Caldera complies with all outstanding orders of the arbitrator. Post-award interest was to accrue at the annual rate of 9% from the date of the Award, November 10, 2014, with the exception of interest on the attorney's fees of $1,822,416.76, which would accrue at the 9% rate from April 30, 2014 onward. (Award 40-41). On June 26, 2016, an Armenian Court confirmed the Award. (Frager Decl. ¶ 7).[2]

---

[2] The Frager Declaration includes a purported copy of the Armenian Court's judgment, written in Armenian. (Frager Decl., Ex. 7). While the Court does not have facility with the Armenian language, it has no reason to doubt the sworn declaration of Mr. Frager.

**B.     Procedural Background**

Petitioners brought the instant action against Respondent on May 17, 2018. (Dkt. #1). In response to this Court's June 4, 2018 Order (Dkt. #5), on July 6, 2018, Petitioners filed a motion for summary judgment and supporting papers (Dkt. #9-12). Respondent was served on June 13, 2018, but has never appeared in this case. (Dkt. #6). Petitioners seek to confirm the arbitration award.

## DISCUSSION

**A.     The Court Confirms the Arbitration Award**

    **1.     Unopposed Petitions to Confirm Arbitration Awards**

The Federal Arbitration Act provides "a streamlined process" for a party seeking to confirm, vacate, or modify an arbitration award. *Mason Tenders Dist. Council of Greater N.Y. & Long Island* v. *Adalex Grp., Inc.*, No. 13 Civ. 764 (PAE), 2013 WL 5322371, at *2 (S.D.N.Y. Sept. 23, 2013) (internal quotation marks and citation omitted); *accord Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund* v. *Baywood Concrete Corp.*, No. 17 Civ. 1800 (ER), 2017 WL 3207797, at *2 (S.D.N.Y. July 26, 2017) ("[A]n application for a judicial decree confirming an award receives streamlined treatment as a motion, obviating the separate contract action that would usually be necessary to enforce or tinker with an arbitral award in court." (internal quotation marks omitted) (quoting *Hall St. Assocs., L.L.C.* v. *Mattel, Inc.*, 552 U.S. 576, 582 (2008)). In furtherance of this streamlined procedure, judicial review of an

8

arbitral award is sharply circumscribed. *See Willemijn Houdstermaatschappij, BV* v. *Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997); *Adalex Grp., Inc.*, 2013 WL 5322371, at *2.

Indeed, "[n]ormally, confirmation of an arbitration award is 'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court,'" and under the Federal Arbitration Act, "the court 'must grant' the award 'unless the award is vacated, modified, or corrected.'" *D.H. Blair & Co., Inc.* v. *Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (quoting 9 U.S.C. § 9; *Florasynth, Inc.* v. *Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984)). The movant's burden "is not an onerous one" and requires only "a barely colorable justification for the arbitrator's conclusion." *Neshgold LP* v. *N.Y. Hotel & Motel Trades Council, AFL-CIO*, No. 13 Civ. 2399 (KPF), 2013 WL 5298332, at *7 (S.D.N.Y. Sept. 19, 2013) (internal quotation marks omitted) (quoting *N.Y.C. Dist. Council of Carpenters Pension Fund* v. *Angel Const. Grp., LLC*, No. 08 Civ. 9061 (RJS), 2009 WL 256009, at *1 (S.D.N.Y. Feb. 3, 2009)). "The arbitrator's rationale for an award need not be explained, and the award should be confirmed 'if a ground for the arbitrator's decision can be inferred from the facts of the case.'" *Gottdiener*, 462 F.3d at 110 (quoting *Barbier* v. *Shearson Lehman Hutton, Inc.*, 948 F.2d 117, 121 (2d Cir. 1991)).

2. **Summary Judgment**

Courts within this Circuit approach an unopposed petition to confirm an arbitration award "as akin to a motion for summary judgment based on the movant's submissions, and the court may not grant the motion without first

9

examining the moving party's submission to determine that it satisfactorily demonstrates the absence of material issues of fact." *Neshgold LP*, 2013 WL 5298332, at *7 (internal quotation marks omitted) (quoting *Gottdiener*, 462 F.3d at 109-10). Under the familiar summary judgment standard, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986); *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Fireman's Fund Ins. Co.* v. *Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 631 n.12 (2d Cir. 2016) (internal quotation marks and citation omitted). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

**B.     Analysis**

    **1.     The Grounds for the Arbitration Award Are Clear**

Mindful of its deferential posture, the Court finds that the grounds for the Arbitration Award are readily discernible from the contents of the Award. The Award contains the arbitrator's factual findings. While the financial components of the Award are quite large, the arbitrator has provided factual support for all of them. For instance, the substantial awards for defamation and tortious interference are supported by the catalogue of unconscionable

10

conduct that the arbitrator recites. (*See* Award 27).³ Justice Cahn's findings surpass the degree of reasoning that courts require to confirm an arbitration award. *See Gottdiener*, 462 F.3d at 110; *cf. Tube City IMS, LLC* v. *Anza Capital Partners, LLC*, 25 F. Supp. 3d 486, 491 (S.D.N.Y. 2014) (confirming arbitration award for return of overpaid invoices). The Court further observes that challenges to the arbitrator's performance were already rejected by a sister court in this District. *Global Gold I*, 941 F. Supp. 2d at 385-89.

There are no grounds for setting aside the Award. *See Gottdiener*, 462 F.3d at 110 ("[T]he court 'must grant' the award 'unless the award is vacated, modified, or corrected.'" (quoting 9 U.S.C. § 9)). It is undisputed that Respondent Caldera was subject to the terms of the JVA, which terms permit Petitioners to initiate arbitration proceedings, and Caldera did not challenge the arbitrability of the dispute before Judge Karas. *See Global Gold I*, 941 F. Supp. 2d at 380 ("Neither party challenges that arbitration was the appropriate

---

³     The Arbitrator recites:

> In the evidence of defamation submitted on the record, Caldera and Bill Mavridis accuse Global Gold and associated individuals' of fraud, embezzlement, holding illegal licenses, material misrepresentations, SEC violations, corruption, being swindlers, engaging in shell games, concealing tax liabilities, money laundering, breaches of fiduciary duties, fraudulent transfers to personal bank accounts, misappropriation of funds, being sued per a purported Dorsey and Whitney complaint, self-dealing, extortion, conducting false prosecutions, ethics code violations, breaches of injunctions, overstating mining volumes, selling material with no gold content, criminal activity being investigated by numerous agencies, pump and dump stock trading, stock manipulation, being liars, and far more. These accusations are not grounded in reality, and no defense was offered despite advance notice and fair opportunity to do so.

(Award 27).

11

forum for resolving this dispute."). The Court may therefore proceed to consider the arbitrator's basis for awarding Global Gold the amounts it sought along with post-award interest.

### 2. Global Gold Is Entitled to Confirmation of the Total Amount of the Arbitrator's Award Except Its Post-Judgment Interest Rate

#### i. Principal Amount

The arbitrator awarded $10,844,413 as a principal amount, and the Award makes clear that this sum consists of liability for defamation and tortious interference, various breaches of the JVA, various damages for non-compliance with the arbitrator's orders, attorney's fees, and the arbitration's costs. (Award 35-41). The arbitrator therefore provided more than a "colorable justification" for awarding these amounts. *Gottdiener*, 462 F.3d at 110 (quoting *Landy Michaels Realty Corp.* v. *Local 32B-32J, Serv. Emps. Int'l Union*, 954 F.2d 794, 797 (2d Cir. 1992)); *see also N.Y.C. Dist. Council of Carpenters* v. *WJL Equities Corp.*, No. 15 Civ. 4560 (KPF), 2015 WL 7571835, at *4 (S.D.N.Y. Nov. 24, 2015) (confirming arbitration award where "findings [were] in line with the written agreement, and [party challenging confirmation] provided no evidence that would draw them into question").

#### ii. Interest on the Principal Debt Amount

The Court only confirms the arbitrator's post-award, *pre-judgment* interest up to the date of the entry of the judgment in this case. As discussed below, Global Gold is entitled to *post-judgment* interest as defined by federal statute rather than, as the arbitrator applied, state law. "[P]ost-award pre[-]judgment interest is a matter left with the district court." *Moran* v.

12

*Arcano,* No. 89 Civ. 6717 (CSH), 1990 WL 113121, at *3 (S.D.N.Y. July 27, 1990). Conversely, federal law controls post-judgment interest by statute. *See* 28 U.S.C. § 1961. "The Second Circuit has held that this statute applies equally to a federal judgment confirming an arbitration award, even if the award itself sets a different interest rate." *AXA Versicherung AG* v. *N.H. Ins. Co.*, 962 F. Supp. 2d 509, 512 (S.D.N.Y. 2013) (citing *Carte Blanche (Singapore) Pte., Ltd.* v. *Carte Blanche Int'l, Ltd.*, 888 F.2d 260, 269 (2d Cir. 1989)).

### a. Post-Award, Pre-Judgment Interest

The Court confirms the arbitrator's calculation of post-award interest for the amounts unpaid from the November 10, 2014 date of the Arbitration Award and from April 30, 2014, with respect to attorney's fees — but only to the date of the entry of judgment in this case — at an annual rate of 9%. "Post-award, pre[-]judgment interest is generally awarded at the discretion of the district court, and there is a presumption in favor of awarding such interest." *In re Arbitration Between Westchester Fire Ins. Co.* v. *Massamont Ins. Agency, Inc.*, 420 F. Supp. 2d 223, 226 (S.D.N.Y. 2005) (citing *In re Waterside Ocean Navigation Co.* v. *Int'l Navigation, Ltd.*, 737 F.2d 150, 153-54 (2d Cir. 1984); *Irving R. Boody & Co.* v. *Win Holdings Int'l, Inc.,* 213 F. Supp. 2d 378, 383 (S.D.N.Y. 2002)). A district court bestowed with federal-question jurisdiction assesses the rate of post-award, pre-judgment interest as a matter of federal law despite the lack of a federal statute controlling pre-judgment interest. *See Sarhank Grp.* v. *Oracle Corp.,* No. 01 Civ. 1285 (DAB), 2004 WL 324881, at *4 (S.D.N.Y. Feb. 19, 2004) (quoting *Jones* v. *UNUM Life Ins. Co. of Am.,* 223 F.3d

13

130, 139 (2d Cir. 2000)); *In Matter of Arbitration Between P.M.I. Trading Ltd.* v. *Farstad Oil, Inc.*, No. 00 Civ. 7120 (RLC), 2001 WL 38282, at *1 (S.D.N.Y. Jan. 16, 2001)).

A district court considering an award of pre-judgment interest must settle on a rate that compensates for the award's diminution in value over time while not overcompensating the petitioner. *See Sarhank Grp.*, 2004 WL 324881, at *4. Overall, courts should award prejudgment interest if doing so would be "fair, equitable and necessary to compensate the wronged party fully." *Wickham Contracting Co.* v. *Local Union No. 3, Int'l Bhd. of Elec. Workers, AFL-CIO*, 955 F.2d 831, 835 (2d Cir. 1992) (collecting cases). In New York, interest accrues at 9% per year, absent alternative statutory directives. N.Y. C.P.L.R. § 5004. The Court finds that the arbitrator's calculation of post-award, pre-judgment interest at a rate of 9% satisfies these considerations given the parties' selection of New York law as controlling the rights and liabilities arising from their contract. (JVA ¶ 16.8). The Court thus confirms the arbitrator's selection of a 9% interest rate for the post-award, pre-judgment period from November 10, 2014.

### b. Post-Judgment Interest

The parties' selection of New York law does not, however, supplant the statutorily defined post-judgment interest rate applicable to federal judgments. "Section 1961 of Title 28 establishes the rate of interest that is to be paid 'on any money judgment in a civil case recovered in a district court,' linking that rate to the rate of interest the government pays on money it borrows by means

14

of Treasury bills." *Jones*, 223 F.3d at 139 (quoting 28 U.S.C. § 1961(a)). The Second Circuit has established that although parties may depart from § 1961's applicable interest rate by contract, "they [must] do so through 'clear, unambiguous and unequivocal language.'" *AXA Versicherung AG*, 962 F. Supp. 2d at 512 (quoting *Westinghouse Credit Corp.* v. *D'Urso*, 371 F.3d 96, 102 (2d Cir. 2004)). Indeed, "[m]ost fundamentally, such contracts must actually indicate the parties' intent to deviate from § 1961." *Westinghouse Credit Corp.*, 371 F.3d at 102.

Here, the parties selected state law by merely providing, "[a]ll matters relating to the interpretation, construction, validity and enforcement of this Agreement shall be governed by the internal laws of the State of New York, USA, without giving effect to any choice of law previsions thereof." (JVA ¶ 16.8). Such a blanket statement is not sufficiently specific to disclaim the applicability of § 1961. *Cf. Soc'y of Lloyd's* v. *Reinhart*, 402 F.3d 982, 1004 (10th Cir. 2005) ("[A]greeing to be bound by [foreign] law does not amount to agreeing to a particular post-judgment interest rate."); *accord Budejovicky Budvar, N.P.* v. *Czech Beer Imps., Inc.*, No. 3:05CV1246 (JBA), 2006 WL 1980308, at *6-7 (D. Conn. July 12, 2006). "The general rule under New York and federal law is that a debt created by contract merges with a judgment entered on that contract," thus extinguishing the contract debt and leaving only the judgment debt. *Westinghouse Credit Corp.*, 371 F.3d at 102. For parties to override this general merger rule and select a particular post-judgment interest rate, "they must express such intent through 'clear,

15

unambiguous and unequivocal' language." *Id.* (citation omitted). No such intent appears here. Therefore, § 1961 controls the interest rate applicable to any unpaid amounts after the entry of judgment in this case.

## CONCLUSION

For the reasons set forth above, Petitioners' motion for summary judgment to confirm the Award is GRANTED. The Clerk of Court shall enter judgment for Petitioners and against Respondent in the amount of $9,021,996.24, with pre-judgment interest calculated at 9% per year from the date of November 10, 2014, and $1,822,416.76 with pre-judgment interest calculated at 9% per year from the date of April 30, 2014. Post-judgment interest will accrue at the statutory rate pursuant to 28 U.S.C. § 1961. Global Gold is also entitled to $650 per day in penalties until Caldera Resources complies with the equitable relief ordered by the arbitrator.

The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated: January 30, 2019
New York, New York

KATHERINE POLK FAILLA
United States District Judge